

**STATE OF LOUISIANA**
DEPARTMENT OF JUSTICE
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 94005
BATON ROUGE, LA
70804-9005

LIZ MURRILL
ATTORNEY GENERAL

October 11, 2024

**VIA ECF**
Lyle W. Cayce
Clerk of Court
United States Court of Appeals, Fifth Circuit
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, Louisiana 70130-3408

    Re:  *Parker v. LeBlanc*, No. 21-30446 (5th Cir.);
            *Hicks v. LeBlanc*, No. 22-30184 (5th Cir.)

Dear Mr. Cayce:

On October 4, the Court issued directives in the above-captioned cases inviting the parties to submit supplemental letter briefs "as to whether or not anything in [the three opinions issued in the en banc proceedings in *Wilson v. Midland County*, No. 22-50998 (5th Cir.)] bears on the correctness of the panel's decision[s]" in these two cases. The State now respectfully submits this letter brief in response.

    **A. *Parker.*** The State does not believe that the *Wilson* opinions bear on the panel decision in *Parker v. LeBlanc*, 73 F.4th 400 (5th Cir. 2023). Unlike the *Wilson* opinions, the *Parker* panel decision does not address *Preiser v. Rodriguez*, 411 U.S. 475 (1973), *Heck v. Humphrey*, 512 U.S. 477 (1994), and their progeny. In addition, the *Parker* panel decision turns solely on issues of qualified immunity and supervisory liability under 42 U.S.C. § 1983. *Wilson* does not address these issues. Accordingly, the State does not believe that *Wilson* bears on the *Parker* panel decision.

    **B. *Hicks.*** The analysis is quite different with respect to the panel decision in *Hicks v. LeBlanc*, 81 F.4th 497 (5th Cir. 2023), which—like

1

the opinions in *Wilson*—is intimately bound up in *Preiser*, *Heck*, and their progeny. The State is acutely aware that this Court has been inundated with briefing on these issues in Louisiana cases—and that the Court is closely divided on how to resolve them. *See McNeal v. LeBlanc*, 93 F.4th 840 (5th Cir. 2024) (9-8 vote denying rehearing en banc). But, it bears noting that this case in particular is at least arguably in *Heck* territory because Mr. Hicks challenges the alleged denial of time-served credits, which the plaintiff in *McNeal* did not; in fact, Mr. Hicks' own counsel drew this precise distinction in thwarting Supreme Court review in *McNeal*.[1] That is thus the argument the State will present to the Supreme Court if this Court denies en banc review in *Hicks*.

If the en banc votes for that argument do not exist, however, there is an alternative that—in light of the fractured *Wilson* opinions—makes sense for all parties and courts involved. As the *Hicks* panel is aware, the State's *Preiser*/*Heck* argument in this case may be independently rejected if, as the *Wilson* dissent argues, that line of cases does not apply to § 1983 plaintiffs who are no longer in custody. That is why the State preserved an argument that, in light of *Randell v. Johnson*, 227 F.3d 300 (5th Cir. 2000) (per curiam), Mr. Hicks' non-custodial status does not shield him from *Preiser*/*Heck*. *See, e.g.*, Op. Br. at 15, 28; Reply Br. at 6, 13–14. If the State is wrong about that argument, however, then that is an independent basis to reject the State's *Preiser*/*Heck* argument. Put otherwise, the difficult *Preiser*/*Heck* issue that is the subject of the *Hicks*

---

[1] *See* Br. in Opp. at 21–27, *LeBlanc v. McNeal*, No. 24-19 (U.S.) (distinguishing McNeal's case on the ground that it did not involve a "challenge[] [to] a sentencing determination made by an administrative body (e.g., a parole board) or prison officials, typically involving eligibility for or revocation of parole or good-time credits"—which is of course Hicks' claim). To be clear, Mr. Hicks should not be penalized for his counsel's conflicting representations on behalf of other clients. But, because the same counsel is pressing these various cases, the Court should be aware that the Supreme Court is hearing a different message that calls the *Hicks* panel decision into question. *See* Reply Br. at 2–3, *LeBlanc v. McNeal*, No. 24-19 (U.S.) (explaining the inconsistency).

panel decision and Judge Oldham's en banc-stage dissent in *McNeal* is beside the point if it turns out that *Preiser*/*Heck* do not even apply to Mr. Hicks since he is no longer in custody.

The alternative is thus this: The Court could (a) grant rehearing en banc in *Hicks*, (b) vacate (at least) Section IV of the panel opinion (the *Preiser*/*Heck* section), and (c) if the *Wilson* dissent has a majority on the merits, issue a short en banc decision overruling *Randell* and rejecting the State's *Preiser*/*Heck* argument based on Mr. Hicks' non-custodial status alone. No oral argument necessary. The decision need only say three things:

- We assume without deciding that Mr. Hicks' claims are otherwise barred by *Preiser*, *Heck*, and their progeny.

- Unlike in *Wilson*, there is no available mechanism under Louisiana law for Mr. Hicks to challenge his alleged overdetention. *Cf. Wilson* Op. 33 (Haynes, J., concurring in part) (conditioning concurrence on the fact that the plaintiff "has not pursued other avenues currently available to challenge her conviction").

- Therefore, for the reasons stated in the *Wilson* dissent, our decision in *Randell* is overruled, and we reject the State's *Preiser*/*Heck* argument because Mr. Hicks is no longer in custody.

This proposal makes sense from every angle. *First*, it makes sense for this Court and for the district judges, attorneys, and litigants in the Fifth Circuit. *Wilson* appeared destined to resolve the *Randell* question once and for all. But the fractured opinions have now left the state of Fifth Circuit law in flux and with no clear answer on *Randell*'s viability going forward. *See Wilson* Op. 38 (Willett, J., dissenting) ("Regrettably, we have squandered that opportunity."). Because this case does not have the key feature that split the *Wilson* Court, therefore, it provides a clean vehicle for the Court to finish the *Randell* job if, indeed, a majority of the Court is inclined to overrule *Randell*. All the heavy lifting on both sides of the issue is already done.

3

*Second*, it makes sense for the Supreme Court. There is no question that Judge Oldham's and Judge Willett's competing, scholarly opinions in *Wilson* nicely set the stage for Supreme Court review on an issue that has divided the federal courts of appeals. But there is an obvious vehicle problem in *Wilson*—namely, the fact that the plaintiff there has available options under Texas law to attack her conviction. As just explained, this case would provide a far cleaner vehicle for the Supreme Court to take up the *Randell* custody issue because it lacks that defect. Accordingly, a quick per curiam decision from the en banc Court on that ground alone would ensure an expeditious route to the Supreme Court.

*Third*, it makes sense for the State. To be clear, the State unequivocally believes that Judge Oldham's plurality opinion in *Wilson* is correct—and the State will press that view in the Supreme Court. But, if the State is wrong on the custody issue, that is—from the State's perspective—the best way to lose the recent spate of "overdetention" cases. That is because the lesser of two evils (again, from the State's perspective) is the bright-line custody rule endorsed by the *Wilson* dissent. Unlike the *Hicks* panel decision, which leaves room for different *Preiser/Heck* answers depending on how an "overdetention" plaintiff frames his claim, a bright-line rule based on custody status would clearly resolve the *Preiser/Heck* issue in these cases. Not in the State's favor, to be sure, but at least in a way that ensures clarity and predictability. And that is in the State's best institutional interest.

*Finally*, this makes sense for Mr. Hicks himself and others similarly situated. He would not be prejudiced by this approach because he would prevail on the *Preiser/Heck* argument, just as he already has at the panel stage. Nor would any other "overdetention" plaintiff be prejudiced because they, like Mr. Hicks, invariably are not in custody when they sue, which means they, too, would benefit from the Court's decision.

No doubt the Court, like the State, desires an end—and a clean one at that—to the *Preiser/Heck* issue in these cases. The above proposal sets the stage for that outcome.

        Respectfully submitted,

        */s/J. Benjamin Aguiñaga*
        J. Benjamin Aguiñaga
          Solicitor General of Louisiana

        *Counsel for Appellants*

cc:    All Counsel (via ECF)